1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   OCULUS INNOVATIVE SCIENCES, INC.,            No. C 06-01686 SI

9            Plaintiff,                          **ORDER GRANTING PLAINTIFF'S**
                                                 **MOTION TO DISMISS AND STRIKE**
10    v.                                         **PORTIONS OF DEFENDANTS'**
                                                 **COUNTERCOMPLAINT**
11  NOFIL CORPORATION, and NAOSHI KONO,

12           Defendants.
                                          /
13

14        On September 7, 2007, the Court heard argument on plaintiff's motion to dismiss two of

15  defendants' counterclaims, to strike an allegation from the countercomplaint, and for a more definite

16  statement of certain claims.  The Court rules as follows.

17

18                               **BACKGROUND**

19        Plaintiff Oculus Innovative Sciences, Inc. (hereinafter "Oculus"), is a medical device and

20  pharmaceutical company headquartered in Petaluma, California.[1]  Oculus has offices and facilities

21  around the world, including a manufacturing plant located outside Mexico City, Mexico.  Defendant

22  Naoshi Kono is the sole owner and director of defendant Nofil Corporation,[2] which is based in Japan.

23  Kono is a Japanese citizen residing in Japan.

24        This lawsuit involves "Microcyn" technology developed by Oculus.  Microcyn is a disinfectant,

25  antiseptic and sterilization agent with a number of uses.  On October 28, 2003, Oculus and Nofil entered

26  ───────────────

27        [1]All of the following facts are taken from Oculus's Complaint, the allegations of which have yet
    to be proved.

28        [2]This Order will refer to defendants collectively as "Nofil."

**United States District Court**
For the Northern District of California

into an Agreement for Mutual Exchange of Confidential Material ("Non-Disclosure Agreement" or "NDA"). Under the NDA, each party agreed not to disclose confidential information ascertained from the other party. On October 30, 2003, the parties entered into an "Exclusive Purchase Agreement" ("EPA"), under which Nofil agreed to manufacture certain machines (the "Products") for the production of Microcyn. Under the EPA, Nofil also agreed not to sell the Products to any other manufacturer besides Oculus.

Oculus alleges that sometime thereafter Nofil, "together with third parties including Cesar Mangotich Pacheco," developed and manufactured the Products for sale to manufacturers other than Oculus. Complaint ¶ 24. In doing so, Oculus alleges that Nofil breached both the NDA and the EPA. Oculus filed with this Court a complaint making these allegations on March 6, 2006. The Complaint includes claims for (1) breach of contract, (2) misappropriation of trade secrets, (3) trademark infringement, (4) interference with economic advantage, (5) unfair competition, and (6) injunctive relief.

Subsequently, Nofil filed a counter-complaint, which they have amended twice. Now before the Court is Oculus's motion to dismiss and strike certain portions of the Second Amended Countercomplaint ("SACC"). When Nofil filed the SACC, they were represented by counsel. Nofil's counsel has since withdrawn, and Nofil has filed no opposition to the instant motion, and did not appear at hearing on the motion.

## LEGAL STANDARD

### I.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is

United States District Court
For the Northern District of California

1   remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings.  *See*

2   *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

3          If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The

4   Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

5   to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

6   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

7   quotation marks omitted).

8

9   **II.     Motion to Strike**

10         Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

11  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.

12  R. Civ. P. 12(f).  Because of the limited importance of pleadings in federal matters, motions to strike

13  are generally disfavored.  *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In

14  most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have

15  no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp.

16  2d 1048, 1057 (N.D. Cal. 2004).  Where the motion involves background or historical material, it should

17  not be granted unless the material is prejudicial to the opponent. *See LeDuc v. Kentucky Cent. Life Ins.*

18  *Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

19

20  **III.    Motion for more definite statement**

21         Under Rule 12(e) of the Federal Rules of Civil Procedure, "if the pleading to which a responsive

22  pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a

23  responsive pleading, the party may move for a more definite statement before interposing a responsive

24  pleading." Fed. R. Civ. P. 12(e).

25

26                              **DISCUSSION**

27  **I.      Motion to dismiss Nofil's RICO counter-claim**

28         Oculus first moves to dismiss Nofil's RICO counter-claim.  For the following reasons, the Court

1    GRANTS Oculus's motion.

2        Under § 1962(c) of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), it is

3    "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

4    which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

5    conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful

6    debt." 18 U.S.C. § 1962(c).  In order to succeed on a RICO claim under § 1962(c), a plaintiff must show

7    "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."  *Jarvis v. Regan*,

8    833 F.2d 149, 151-52 (9th Cir. 1987) (citations omitted).

9        "Racketeering activity" is defined by reference to specific crimes and statutes.  18 U.S.C. §

10   1961(1).  In this case, Nofil asserts 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) as the

11   predicate acts of racketeering activity underlying the first and second causes of action.  *See* SACC ¶ 60.

12   The standards for mail fraud and wire fraud are essentially identical and will be discussed together.  To

13   demonstrate the predicate acts of mail and wire fraud, a plaintiff must show a scheme to defraud,

14   involving use of United States wires or mail, with the specific intent to defraud.  *See Forsyth v. Humana,*

15   *Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999).  Mail or wire fraud includes "any

16   scheme to deprive another of money or property by means of false or fraudulent pretenses,

17   representations, or promises."  *Carpenter v. United States*, 484 U.S. 19, 27, 108 S. Ct. 316, 321 (1987).

18   "The elements of mail fraud are that (1) the Defendant made up a scheme or plan for obtaining money

19   or property by making false statements; (2) the Defendant knew the statements were false; (3) the

20   statements were of a kind that would reasonably influence a person to part with the money or property;

21   (4) the Defendant acted with the intent to defraud; and (5) the Defendant used, or caused to be used, the

22   mails to carry out the scheme."  *United States v. Marconi*, 899 F. Supp. 458, 461 (C.D. Cal. 1995).

23       Claims of mail and wire fraud are subject to the strict pleading requirements of Federal Rule of

24   Civil Procedure 9(b), which provides, in relevant part, that "in all averments of fraud . . . the

25   circumstances constituting fraud . . . shall be stated with particularity."  Therefore, in addition to the

26   "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or

27   misleading about a statement, and . . . an explanation as to why the statement or omission complained

28   of was false or misleading."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 & n.10 (9th Cir. 1999).

United States District Court

For the Northern District of California

These requirements can be fulfilled by pointing to information that was available to the defendants at the time that the allegedly false statements were made. *See Yourish*, 191 F.3d at 993.

A "pattern" of racketeering activity requires the commission within a ten year period of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1). These acts must be related and must amount to, or threaten the likelihood of, continued criminal activity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893, 2899 (1989). In the Ninth Circuit, cases which allege only one scheme, perpetrated on one victim, are usually insufficient to establish a pattern. *See, e.g., Sever v. Alaska Pulp Co.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of RICO claims where "although [plaintiff] alleges a number of 'acts,' [defendant's] collective conduct is in a sense a single episode having the singular purpose of impoverishing [plaintiff], rather than a series of separate, related acts," and pointing to the importance of the fact that "there was but a single victim involved."); *Jarvis v. Regan*, 833 F.2d 149, 153-54 (9th Cir. 1987) (affirming dismissal of a RICO claim where the alleged pattern consisted of three acts of mail and wire fraud committed by legal aid organizations in obtaining a single federal grant); *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (affirming dismissal of RICO claims where alleged pattern consisted of fraudulently obtaining a single shipment of goods).

Nofil has met the strict requirements for pleading mail and wire fraud only with respect to representations allegedly made by Oculus at a single meeting in Japan in October 2003. *See* SACC ¶¶ 15-17. This single instance of fraud, perpetrated on one victim, is insufficient to constitute a "pattern" for RICO purposes. Accordingly, the Court GRANTS Oculus's motion to dismiss Nofil's seventh counter-claim, for violation of RICO, with leave to amend.

**II.    Motion to dismiss Nofil's counter-claim for breach of the covenant of good faith**

Oculus next moves to dismiss Nofil's sixth counter-claim, for breach of the covenant of good faith and fair dealing. For the following reasons, the Court GRANTS Oculus's motion.

Under California law, a cause of action exists for breach of the implied covenant of good faith and fair dealing under both tort and contract principles. "A tort claim for breach of the implied covenant of good faith and fair dealing requires proof of a special relationship between the parties, characterized

United States District Court
For the Northern District of California

by elements of public interest, adhesion and fiduciary responsibility." *Tominaga v. Shepherd*, 682 F. Supp. 1489, 1498 (C.D. Cal. 1988) (citing *Seaman's Direct Buying Service, Inc. v. Standard Oil*, 36 Cal. 3d 752, 768-69, 206 Cal. Rptr. 354, 686 P.2d 1158 (1984)). "[A] number of factors must be present for a 'special relationship' to exist:  (1) the parties are in inherently unequal bargaining positions, (2) the plaintiff's motivation for entering into the contract must be a non-profit motivation (to secure peace of mind, security and future protection), (3) plaintiff is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the defendant to perform, and (4) defendant is aware of plaintiff's vulnerability." *Id.* (citing *Wallis*, 160 Cal. App. 3d at 1118).

Here, Nofil fails to adequately allege a "special relationship."  The individuals involved in the transactions at issue here were all apparently experienced, if not sophisticated, business people, whose primary motivation was to make money.  Accordingly, Nofil fails to state a tort claim for breach of the covenant of good faith and fair dealing.

Under contract principles, "California law implies a covenant of good faith and fair dealing in every contract." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citation omitted). "The implied covenant imposes certain obligations on contracting parties as a matter of law -- specifically, that they will discharge their contractual obligations fairly and in good faith." *Id.* (citing *Koehrer v. Superior Court*, 181 Cal. App. 3d 1155, 1169, 226 Cal. Rptr. 820, 828 (1986)).  "A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements:  (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Garey/Philadelphia v. Yoshinoya West, Inc.*, 2006 Cal. App. Unpub. LEXIS 11533 at *1, *11-*12 (Cal. Ct. App. Dec. 21, 2006) (citing 1-300 Judicial Council of California Civil Jury Instructions 325).

Here, Nofil has not adequately alleged how Oculus "unfairly interfered with the [Nofil's] right to receive the benefits of the contract." *Id.*  Accordingly, the Court GRANTS Oculus's motion to dismiss Nofil's sixth counter-claim, for breach of the covenant of good faith and fair dealing, with leave to amend.

United States District Court
For the Northern District of California

### III.   Motion to strike

Oculus asks that the Court strike from Nofil's counter-complaint the following allegation: "Counterdefendant Alimi runs Oculus as his personal venture, a public corporation – yet dominated as a hegemony."  SACC ¶ 7.  The Court agrees with Oculus that this allegation is immaterial, impertinent, and inflammatory, and the Court therefore STRIKES the allegation pursuant to Federal Rule of Civil Procedure 12(f).

### IV.   Motion for more definite statement

Oculus next requests a more definite statement of Nofil's fifth counterclaim for conversion and Nofil's prayer for damages, pursuant to Rule 12(e).  For the following reasons, the Court GRANTS IN PART Oculus's motion.

Nofil's conversion counterclaim states, in pertinent part: "[Oculus] by [its] actions alleged above wrongfully converted [Nofil's] confidential proprietary information . . . ."  SACC ¶ 43.  Nowhere in the SACC, however, does Nofil describe the confidential proprietary information that Oculus allegedly converted.  Nofil need not, at the pleading stage, provide Oculus with a detailed inventory of all the proprietary information allegedly misappropriated.  However, without knowing at least the general nature of the information Nofil alleges Oculus to have misappropriated, Oculus cannot "reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  The Court therefore GRANTS Oculus's motion for a more definite statement with respect to Nofil's conversion counterclaim.

Oculus also moves for a more definite statement of Nofil's prayer for relief because "[Nofil] provide[s] no detail or explanation of the basis for the[] extraordinarily high damages" claimed.  Mot. at 14:14-15.  The Court DENIES Oculus's request.  A prayer for relief does not need to set out the calculations underlying a damages amount.  Oculus also complains that Nofil's claimed damages increased substantially from the original Countercomplaint to the SACC.  This fact, Oculus argues, "evidences the speculative and inflated nature of [Nofil's] pleading."  Mot. at 14:26.  The Court disagrees.  Precise damages are often difficult to ascertain at the pleading stage, and therefore an increase in the claimed damages is just as likely to reflect further investigation as it is to reflect speculation and arbitrary inflation.  The Court DENIES Oculus's motion for a more definite statement

with respect to Nofil's prayer for relief.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Oculus's motion, with the exception discussed above.  The Court GRANTS Nofil leave to amend their Second Amended Countercomplaint, to attempt to remedy the shortcomings identified above.  Should they wish to do so, they must do file their Third Amended Countercomplaint by October 5, 2007.  If they fail to do so, their sixth and seventh counterclaims will be dismissed, with prejudice.  The Court reminds Nofil that as a corporation, it may not proceed *pro se*, and therefore will need to retain counsel in order to file an amended countercomplaint.   Mr. Kono may proceed *pro se*, and may file an amended countercomplaint without counsel.  [Docket No. 58]

**IT IS SO ORDERED.**

Dated:  September 10, 2007

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California