IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCULUS INNOVATIVE SCIENCES, INC., | No. C 06-1686-SI |
| Plaintiff, | **ORDER DISMISSING COUNTER-COMPLAINT AND GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT** |
| v. | |
| NOFIL CORPORATION, *et al.*, | |
| Defendants. | |

On November 9, 2007 the Court heard argument on two motions brought by plaintiff Oculus Innovative Sciences: (1) to dismiss the counter-complaint of defendants Naoshi Kono and Nofil Corporation pursuant to Federal Rule of Civil Procedure 41(b) [Docket No. 67]; and (2) to render summary judgment in favor of plaintiff [Docket No. 70]. Defendants have failed to appear in this action since June 22, 2007 when the Court granted defendants' attorney's motion to be relieved as counsel. Having considered the papers submitted and the arguments of counsel, and for the reasons set forth below, the Court DISMISSES Nofil's counter-complaint with prejudice, and GRANTS in part and DENIES in part Oculus' motion for summary judgment.

**BACKGROUND**

Plaintiff Oculus Innovative Sciences, Inc., is a medical device and pharmaceutical company headquartered in Petaluma, California.[1] Oculus has offices and facilities around the world, including a manufacturing plant located outside Mexico City, Mexico. Defendant Naoshi Kono is the sole owner

---

[1] All of the following facts are taken from Oculus's First Amended Complaint ("FAC"), the allegations of which have yet to be proved.

of defendant Nofil Corporation,[2] which is based in Japan. Kono is a Japanese citizen residing in Japan.

This lawsuit involves "Microcyn" technology developed by Oculus. Microcyn is a disinfectant, antiseptic and sterilization agent with a number of uses. On October 28, 2003, Oculus and Nofil entered into an Agreement for Mutual Exchange of Confidential Material ("Non-Disclosure Agreement" or "NDA"). Under the NDA, each party agreed not to disclose confidential information ascertained from the other party. On October 30, 2003, the parties entered into an "Exclusive Purchase Agreement" ("EPA"), under which Nofil agreed to manufacture certain machines (the "Products") for the production of Microcyn. Under the EPA, Nofil also agreed not to sell the Products to any other manufacturer besides Oculus. On July 1, 2005, Kono executed a Promissory Note that obligated Nofil to repay more than $55,000 plus interest, which Oculus had loaned to Nofil.

Oculus alleges that sometime after October 2003, Nofil, "together with third parties including Cesar Mangotich Pacheco, a Mexican national and former Oculus employee," developed and manufactured the Products for sale to manufacturers other than Oculus. FAC ¶ 24. In doing so, Oculus alleges that Nofil breached both the NDA and the EPA. Oculus also alleges that Nofil has failed to repay the money that Oculus loaned to Nofil. Oculus filed its complaint with this Court on March 6, 2006, and filed an amended complaint on April 13, 2006. The amended complaint includes claims for (1) breach of the NDA and EPA contracts, (2) breach of the Promissory Note, (3) misappropriation of trade secrets, (4) trademark infringement, (5) interference with economic advantage, (6) unfair competition, and (7) injunctive relief.

Subsequently, Nofil filed a counter-complaint, which they amended twice. When Nofil filed the second amended counter-complaint, they were represented by counsel. Nofil's counsel withdrew on June 22, 2007. On September 10, 2007, the Court granted Oculus' motion to dismiss and strike portions of Nofil's counter-complaint. Nofil failed to oppose that motion and did not appear at the hearing. The Court granted Nofil leave to file a third amended counter-complaint no later than October 5, 2007. Nevertheless, Nofil has not filed a third amended counter-complaint.

Oculus now moves the Court: (1) to dismiss Nofil's counter-complaint with prejudice pursuant

---

[2]This Order will refer to defendants collectively as "Nofil."

to Federal Rule of Civil Procedure 41(b); and (2) to render summary judgment in favor of plaintiff.

## I. MOTION TO DISMISS

Federal Rule of Civil Procedure 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication on the merits." The same rule applies to the dismissal of any counterclaim. Fed. R. Civ. P. 41(c).

Here, despite having filed a counter-complaint on February 12, 2007, and having amended it twice, Nofil failed to oppose Oculus' motion to dismiss the second amended counter-complaint. Nofil has also failed to file a third amended counter-complaint by the October 5, 2007 deadline ordered by the Court. As Oculus points out, Nofil has not propounded discovery, has not noticed depositions, has not designated experts, has not responded to Oculus' discovery requests, has not participated in mediation, and has consented to the withdrawal of counsel. Nofil did not oppose the current motion to dismiss, and did not appear at the hearing. Accordingly, the Court finds that Nofil has failed to prosecute its claims and DISMISSES the second amended counter-complaint WITH PREJUDICE.

## II. MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial; the moving party need only point out to the court that there is an absence of evidence

3

to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). The Court may not "find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

**DISCUSSION**

Oculus has alleged the following seven causes of action: (1) breach of the Non-Disclosure Agreement and the Exclusive Purchase Agreement, (2) breach of the Promissory Note, (3) misappropriation of trade secrets, (4) trademark infringement, (5) interference with economic advantage, (6) unfair competition, and (7) injunctive relief. In support of its claim and motions, Oculus has provided to the Court numerous declarations and documentary evidence. In contrast, Nofil has provided only one declaration in this action: the declaration of Naoshi Kono in support of Nofil's motion to join an indispensable party (which was denied). In that declaration, Mr. Kono states, in relevant part, that he speaks and reads only Japanese and that he does not speak or read English or any other language. Kono Decl. ¶ 2. Nofil has also filed an answer to Oculus' second amended complaint. However, Nofil subsequently failed to respond to Oculus' discovery requests, including its requests for admission.

4

1 Mindful of the legal standard for granting summary judgment, the Court will measure the evidence
2 against the elements of each of Oculus' claims against Nofil.

**1.      Breach of the Non-Disclosure Agreement and the Exclusive Purchase Agreement**

A plaintiff is entitled to summary judgment on a claim for breach of contract where "he has established by competent evidence the existence of a contract, defendants' breach, and damages, and defendants did not controvert such facts." *Law Offices of Dixon R. Howell v. Valley*, 129 Cal. App. 4th 1076, 1092 (Cal. Ct. App. 2005) (citing *Coyne v. Krempels*, 36 Cal. 2d 257, 261-62 (1950)).

Here, Oculus has presented copies of both the Non-Disclosure Agreement and the Exclusive Purchase Agreement. Schutz Decl. ¶¶ 4-5, Exs. A & B. The NDA, dated October 28, 2003, prohibits Nofil from disclosing Oculus' confidential information relating to its Microcyn technology. *See id.* The EPA, dated October 30, 2003, prohibits Nofil from manufacturing certain machines (the "Products") for any person or entity other than Oculus. *Id.* Nofil, when it was represented by counsel, admitted to signing the contracts in its answer, but raised various legal defenses to their validity or enforceability. However, Nofil has presented no evidence in support of those defenses, and thus the Court cannot consider them. Accordingly, the Court finds Oculus has met its burden regarding the first element of its breach of contract claim.

Oculus contends that Nofil breached the NDA and the EPA when it manufactured and delivered the Products called for in the EPA to one of Mr. Mangotich's companies, Prodinnv, in Morelia, Mexico.[3] The NDA provides, in relevant part:

> 1. For purposes of this agreement, Confidential Information means any information, not generally known, relating to NOFIL's or OCULUS's business, and includes, but is not limited to, trade secrets (including information regarding pending patent applications), customer and supplier lists, business plans, annual and interim financial statements, projections, and information pertaining to any of the foregoing, needs and requirements of customer business expansions or acquisitions, and any and all negotiations leading up to an agreement or the decision not to enter an agreement. Information within the foregoing definition shall be treated as Confidential Information regardless of its source, except as provided for in Section 4, below.
> . . .
> 3. Each party agrees that . . . (d) it and its employees, agents and representatives will not disclose any Confidential Information to unauthorized parties or use any Confidential

---

[3]Oculus alleges that Mangotich has two Mexican companies, Prodinnv and Advance Tech.

5

> Information for the purpose of competing with the other party or soliciting its customers, consultants or employees, or for any other purpose which may be detrimental to the other party, its present or potential business or its shareholders . . . .
>
> 4. Confidential Information will not include information that: (a) is or becomes generally known or available by publication, commercial use or otherwise through no fault of the receiving party; (b) is known to the receiving party at the time of the disclosure without violation of any confidentiality restriction and without any restriction on the receiving party's further use or disclosure; (c) is documented as having been independently developed by the receiving party; or, (d) properly came into the possession of the receiving party from a third party which is not under any obligation to maintain the confidentiality of such information.

Schutz Decl. Ex. A, ¶¶ 1, 4. Under the EPA, Nofil agreed to manufacture certain products. Schutz Decl. Ex. B. Specifically, Nofil was to manufacture four ionic exchange membranes for a price of $3,500 each, and three ionic exchange electrolyzers for a price of $135,000 each. *Id.* The ionic exchange membranes and electrolyzers were for the purpose of oxidizing water into a stable disinfectant liquid. *Id.* The EPA included a list of eighteen product specifications. *Id.* The EPA further provides:

> **Exclusivity.** Based upon the Product specifications provided herein and the fact that the Products will incorporate Oculus's proprietary technology (constituting a part of the Confidential Information defined below), Nofil agrees that it shall not enter into an agreement with any other manufacturer to permit such manufacturer to sell, distribute or combine in any manner the Product. In addition and for the same reasons, Nofil agrees not to enter into any agreement with any of Oculus's current or future competitors for the manufacturing of Products.
>
> **Confidential Information.** Nofil acknowledges that during the course of this engagement with the [sic] Oculus, Nofil will have access to information relating to patents, technical specifications, personnel, sales, forecasts, customers and financial, operational and scientific matters of Oculus, whether developed by Nofil or by others (collectively, "Confidential Information"). Nofil understands that any and all Confidential Information is [sic] received or developed is governed by the Agreement for Mutual Exchange of Confidential Information entered into by the parties on our about October 29, 2003 [the NDA]. Any changes to, modifications of, and/or improvements made to the Products by Nofil remain the exclusive property of Oculus.

*Id.*

In support of this breach of contract claim, Oculus offers the sworn declaration of Akihisa Akao, a member of the Oculus board of directors.[4] Akao states she personally met with defendant Kono at Nofil's offices in Kyoto, Japan on October 12, 2005 to discuss "Mr. Kono's violation of [the NDA and

---

[4]Oculus also offers the declaration of its president, Hoji Alimi, who states he met with Mr. Mangotich on October 16, 2005 in Guadalajara, Mexico. Because Oculus offers this evidence for the truth of what Mr. Mangotich purportedly stated during that meeting, this evidence is inadmissible hearsay for which there is no exception. Fed. R. Evid. 801-807. Accordingly, the Court may not consider it. Fed. R. Civ. P. 56(e).

6

the EPA]." Akao Decl. ¶¶ 3, 5. She recounts the meeting as follows:

> 6. During the course of this discussion, Mr. Kono admitted to me that he breached these contracts. Specifically, he admitted that he manufactured and sold two electrolyzed water machines to Prodinnv, a company located in Morelia, Mexico, and founded by Mr. Caesar Mangotich, a former Vice President of Latin America for Oculus. Mr. Kono also admitted to me:
>     a. that he manufactured the two Machines for Prodinnv;
>     b. that he manufactured the Machines in Japan and shipped them to Prodinnv's headquarters in Morelia, Mexico;
>     c. that he was paid by Mr. Mangotich for the Machines; and
>     d. that Mr. Mangotich promised additional orders of the Machines in the future.
>
> 7. Also during the course of this discussion, Mr. Kono admitted that he knew that Mr. Mangotich was a former Oculus employee who planned to use the Machines to produce a Microcyn-like product to be offered for sale to Oculus' existing and potential customers, including the Mexican government's Ministry of Health, in direct competition with Oculus.

*Id.* ¶¶ 6-7.

Although Oculus does not cite to it in direct support of its breach of contract claim, it also offers the declaration of Everardo Garibay, Oculus' director of finance and administration. Mr. Garibay states that, following the termination of Mr. Mangotich in or about September 2005, several documents were found in his office, including (1) minutes of a purported shareholder meeting of one of Mr. Mangotich's Mexican companies, Advance Tech; (2) a Professional Services Agreement between Mr. Mangotich and Mr. Kono, calling for the production of electrolyzed water machines by Kono for Mr. Mangotich; and (3) a Japanese translation of the Agreement. Garibay Decl. ¶3, Exs. A, B, and C. These documents are not dated or signed. Oculus contends that these documents reflect "at the least" a proposed agreement between Mangotich and Kono, pursuant to which Kono would be granted shares in Mangotich's company, Advance Tech. Motion for Summ. J. at 7. According to Oculus President Mr. Alimi, Mangotich worked in Oculus' factory in Morelia, Mexico, and he was intimately involved with the production and marketing of Microcyn in Mexico. Alimi Decl. ¶ 7.

Finally, Oculus points out that Nofil has "admitted" the truth of certain facts establishing the elements of each of Oculus' claims because Nofil failed to respond to Oculus' Requests for Admission pursuant to Federal Rule of Civil Procedure 36(a). The Court also notes that, during the hearing on Nofil's attorney's motion to withdraw as counsel, Nofil's attorney represented to the court that Mr. Kono and Nofil understand the consequences of proceeding without counsel, including the possibility

7

of entry of default against Nofil. Order Granting Motion to Withdraw as Counsel at 1. Because this case is now in a default-like posture, the Court will give weight to the "admissions" made by operation of Rule 36(a).

In light of the evidence presented, the Court finds that Oculus has met its burden on the second element of its breach of contract claim.

Finally, Oculus presents evidence that it has suffered monetary damages as a result of these breaches. Specifically, Oculus CFO Robert Miller states that Oculus has suffered monetary damages in the amount of $5.9 million resulting from the breach of the EPA and NDA. Miller Decl. ¶ 3-5, Exs. A & B. These damages are based on so-called "historical" lost profits of approximately $900,000 and projected future lost profits of more than $5 million. Miller Decl. ¶¶ 4-5, Ex. A. These lost profits are allegedly the result of Prodinnv and other competitors in the Mexican market forcing Oculus to lower its prices. *See id.* Oculus calculates its historical lost profits by comparing the price its Microcyn product allegedly commanded between January 2006 and August 2007, with the price it was allegedly receiving on public contracts prior to "entry into the marketplace by Defendants' associates." *Id.* Oculus calculates its future lost profits through FY 2013 by assuming a 15% annual growth rate, and assuming a price of $13 per five-liter units of its Microcyn products. Because Nofil has presented no evidence that Oculus has not suffered damage as a result of Nofil's breach, the Court finds Oculus has met its burden with respect to the third element of its breach of contract claims. That is, the Court finds Oculus has suffered *some* damage. However, the Court makes no determination at this stage as to whether Oculus is actually entitled to the amount of damages it claims. Oculus may specially notice an evidentiary hearing on the issue of damages.

2.  **Breach of the Promissory Note**

Oculus has also presented to the Court a copy of the Promissory Note, signed by Mr. Kono and dated July 1, 2005. Miller Decl. ¶ 5, Ex. B. Nofil has also admitted to signing the Promissory Note in its answer, and thus Oculus has met its burden with respect to the first element of this breach of contract claim.

Oculus presented evidence that Nofil breached the Promissory Agreement by failing to pay back

the loan per the terms of the agreement. *See* Miller Decl. ¶ 5, Ex. B; Munter Decl. ¶ 3-4, Ex. A. Based on the evidence presented, the Court finds that Nofil owed Oculus $56,757.12 on June 30, 2005, and that Nofil still owes that money, plus interest of seven percent per annum, compounded monthly, which will continue to accrue until the loan is re-paid.

### 3. Trade secret misappropriation

To prevail on a claim of trade secret misappropriation, a plaintiff must demonstrate (1) the existence of a trade secret, and (2) misappropriation of the trade secret. *See* Cal. Civ. Code § 3426.1(b); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (Cal. Ct. App. 1968); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D.Cal. 2006). A "trade secret" is defined under California law as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "[T]he complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Diodes*, 260 Cal. App. 2d at 253; *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1992). "If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process, without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial . . . ." *Diodes*, 260 Cal.App.2d at 253.

Here, Oculus has alleged the existence of trade secrets consisting of "confidential information" as defined in the NDA and the EPA, and quoted above. The only evidence cited by Oculus to support the existence of the trade secrets is the text of those two contracts. While the Court does not find this evidence to be overwhelming, it will assume for present purposes that Oculus can establish the presence of some trade secrets that fall within the scope of the NDA. Accordingly, the Court finds Oculus can meet its burden on the first element of its trade secret misappropriation claim.

9

The primary evidence Oculus presents regarding misappropriation is the declaration of Ms. Akao, who recounts the admissible hearsay testimony of defendant Kono that he manufactured and sold two of the machines covered by the Exclusive Purchase Agreement to Oculus' competitor in Mexico, Prodinnv. Oculus relies on *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (Cal. Ct. App. 2000) for the proposition that "[e]mploying the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of the trade secret information, all constitute use." Oculus further contends that Nofil could not have made the machines without using the confidential information, including Oculus' trade secrets, provided to Nofil following execution of the NDA and the EPA. Oculus also points out that, by failing to respond to discovery in this action, Nofil has admitted to misappropriation of Oculus' trade secrets. Munter Decl. ¶¶ 3-4, Ex. A, and RFAs 1, 3 and 6.

On this record, and considering the default-like posture of the case, the Court finds Oculus has met its burden with respect to the second element of its trade secret misappropriation claim.

**4.     Trademark infringement**

To prevail on a claim of trademark infringement, Oculus must establish that Nofil was "using a mark confusingly similar to a valid, protectable trademark" owned by Oculus. *Brookfield Communs., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999).

Here, while Oculus has presented a copy of its trademark registration for the name "Microcyn," it does not explain how Nofil infringed that mark. The only evidence it presents that Nofil infringed Oculus' rights are the "admissions" Nofil made by operation of Federal Rule of Civil Procedure 36(a). As discussed above, the Court will give some evidentiary weight to these "admissions." However, unlike the evidence offered in support of its other claims, Oculus presents no corroborating evidence of infringement here. Oculus has presented copies of Prodinnv brochures advertising that company's products, but nowhere in those materials does the word Microcyn—or anything similar—appear. Garibay Decl. Ex. B. The remaining evidence at best shows only that Nofil manufactured machines for Prodinnv; not that Nofil actually used the Microcyn trademark. Due to the contradictory evidence in the record, the Court finds Oculus has failed to meet its burden on the second element of its trademark

10

infringement claim. If Oculus can produce additional evidence in support of its trademark infringement claim, the Court may reconsider its ruling.

### 5. Interference with economic advantage

To prevail on its claim of interference with economic advantage, Oculus must produce proof of: (1) an existing beneficial relationship between Oculus and its customers; (2) awareness of the relationship by Nofil; (3) intentional conduct by Nofil designed to disrupt the beneficial relationship; and (4) damages. *JRS Prods. Inc. v. Matsushita Electric Corp. of Am.*, 115 Cal. App. 4th 168, 180 (2004).

Here, Oculus presents the declarations of Ms. Akao and Mr. Miller, as recounted above. This evidence, in combination with the "admissions" made by operation of Rule 36(a), is sufficient establish the elements of the alleged tort. Accordingly, the Court finds Oculus has met its burden on its interference cause of action.

### 6. Unfair competition

The tort of unfair competition, under California law, includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, untrue or misleading advertising or any act prohibited by the Business and Professions Code section 17200. To prevail on a claim of unfair competition, a plaintiff must produce proof of "conduct that . . . violates the policy or spirit of [such law] or otherwise significantly threatens or harms competition." *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999).

Here, Oculus contends that Nofil's trade secret misappropriation and intentional interference with Oculus' economic advantage constitute unfair competition. Oculus offers the declaration of Ms. Akao, as quoted at length above, and the "admissions" made by operation of Rule 36(a). On that record, the Court finds Oculus has met its burden with respect to its unfair competition claim.

### 7. Injunctive relief

Oculus seeks a Court order: (1) permanently enjoining defendants from using Oculus'

11

confidential information, including its trade secrets, related to Microcyn technology; (2) permanently enjoining Nofil from manufacturing the products called for in the EPA for persons or entities other than Oculus; (3) permanently enjoining Nofil from using the Microcyn trademark; (4) requiring Nofil to return any documents or materials that contain, discuss, or reflect Oculus' confidential information; (5) requiring Nofil to provide an accounting of profits made from their manufacture and sale of the products described in the EPA to Prodinnv and any other third party; and (6) requiring Nofil to disgorge any such profits to Oculus.

A plaintiff may be granted an injunction if it can demonstrate that: (1) it has suffered an irreparable injury; (a) that remedies available at law are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships between the parties; and (4) the public interest would not be dis-served by a permanent injunction. *eBay Inc. v. MercExchange, LLP*, 126 S. Ct. 1837 (2006).

Here, Oculus contends that it has suffered irreparable harm due to Nofil's misappropriation of its trade secrets and Nofil's infringement of its trademarks. Oculus also points to the text of the NDA, wherein Nofil acknowledged that Oculus "may suffer irreparable harm if [Nofil] makes any unauthorized disclosures or communication of any Confidential Information to any third party . . . ." Schutz Decl. Ex. A, ¶ 7. The NDA further provides:

> The parties agree that they may not have an adequate remedy at law for any breach or non-performance of the terms of this Agreement and that this Agreement, therefore, may be enforced in equity by specific performance or a temporary restraining order and/or injunction.

*Id.*

Because Oculus has prevailed on its trade secret misappropriation claim, but not on its trademark infringement claim, the Court can only grant a portion of the injunction sought. Accordingly, the Court ORDERS defendant Nofil to do the following: (1) to permanently refrain from using Oculus' confidential information, including its trade secrets, related to Microcyn technology; (2) to permanently refrain from manufacturing the products called for in the EPA for persons or entities other than Oculus; (3) to return any documents or materials that contain, discuss, or reflect Oculus' confidential information; (4) to provide Oculus with an accounting of profits made from Nofil's manufacture and

sale of the products described in the EPA to Prodinnv and any other third party; and (5) to disgorge any such profits to Oculus.

## CONCLUSION

For the foregoing reasons, and for cause shown, the Court GRANTS in part and DENIES in part Oculus' motion for summary judgment without prejudice. The trial date in this matter is hereby VACATED. If Oculus can present more evidence to support its trademark infringement claim, it may renew its motion with respect to that cause of action no later than December 14, 2007. Oculus is also granted leave to specially notice an evidentiary hearing at which time it may offer proof of its alleged damages.

**IT IS SO ORDERED.**

Dated: November 15, 2007

SUSAN ILLSTON
United States District Judge